| 66 | 643 |
| 74 | 135 |
| 77 | 264 |
| 66 | 643 |
| 84 | 537 |

## L. TAYLOR v. C. C. BURKE.

(Case No. 2085.)

1. EVIDENCE—SCHOOL LAND—SURVEYOR'S BOOKS—In order to admit a surveyor's books in evidence, it is not necessary that they should be produced by the surveyor in person; neither is it always necessary that an entry therein offered in evidence, should have been made by the surveyor or by his authorized deputy, or that it should have been signed by the surveyor officially.

2. EVIDENCE—SURVEYOR'S BOOKS—Under the act of April 12, 1883, an application to purchase school land may be shown by an entry in a book kept by the surveyor, in which to enter such applications, when the particular entry was made nder

instructions from the surveyor, and by his request and authority, though not made by a regularly authorized deputy.

3. SALE OF SCHOOL LAND—STATUTE CONSTRUED—The act of April 12, 1883, gave to persons who, on the 1st day of January of that year, were actual settlers in good faith, on school land, the preferred right to buy given quantities of land, directed by that act to be sold.

4. STATUTES CONSTRUED—The provisions of the act of April 12, 1883, reviewed and the conclusions announced:

(1) The actual settlement was the condition on which the law authorized the sale of agricultural land.

(2) That there was no requirement that the actual settler should continue to occupy the land for any period of time beyond the time necessary to make him an actual settler in good faith.

(3) That the act did not require the vendee of the purchaser to enter and hold possession after purchase, although in express terms it gave to the purchaser the right to sell the land at any time after he had made the first payment.

(4) The provision in the act that purchasers may pay the entire price upon proof of actual occupancy, use and improvements for three consecutive years, shows a purpose to enable such occupants to perfect their titles sooner than they otherwise could, but does not make such continuous occupancy essential to the procurement of title.

(5) In the absence of law requiring such occupancy, the courts cannot hold it essential, and as resulting from the fact that the statute declares that agricultural land shall be sold only to actual settlers, and requires an affidavit from the purchaser " that he intends that the land shall be actually settled within six months."

(6) The failure to file a transfer as provided by the 12th section of the act of April 12, 1883, could not operate as a forfeiture of all right under the purchase, and the provision requiring it is directory.

(7) The above conclusions announced in a case wherein it was shown that the settler entered on the land in 1874 and occupied it, claiming the right to so occupy until 1885, when he sold it.

APPEAL from Bowie.   Tried below before the Hon. W. P. McLean.

Action of trespass to try title brought by the appellee, C. C. Burke, against the appellant, Taylor, for the recovery of section twenty (20) school land, situated in Bowie county, alleged to have been bought by J. W. Taylor from the state, as an actual settler, on October 13, 1884, and conveyed by J. W. Taylor to C. C. Burke, on January 26, 1885.   Burke sued and claimed the land as assignee of J. W. Taylor under the laws then in force authorizing actual settlers to purchase school lands belonging to the state.   Burke set up title to the land in fee simple.   Appellant in his answer demurred generally and plead not guilty.   On March 11, 1886, the cause was tried and resulted in a verdict and judgment in favor of the appellee (Burke) for the land and costs of suit, from which judgment Leander Taylor appealed and assigned the following errors, to wit:

1. The court erred in admitting in evidence the entry upon the book purporting to be a record of the county surveyor's office, identified by J. J. King, as said witness, J. J. King, was not the county surveyor, but testified that he made the entry in the book by the direction and authority of S. M. Knight, the county surveyor, but not as deputy county surveyor.   To the reading of which record the defendant objected: 1. Because the record was not produced by the county surveyor, the keeper of the record.   2. Upon the ground that the statement was not signed by the county surveyor, and did not purport to be an official act.   3. Upon the ground that said statement did not contain a proper registration of the application of J. W. Taylor to purchase the land in controversy.   4. Upon the ground that the entry in the book was not legal and competent testimony.

2. The court erred and mislead the jury by the following charge, to wit: "I charge you in this case that if you believe from the evidence that J. W. Taylor, in the month of October, 1884, made application through the county surveyor of Bowie county to purchase the two hundred acres of land in controversy in this suit, and that he did purchase the land at the price of two dollars per acre, and on October 13, 1884, paid one-thirtieth of the purchase money and an installment of interest on the purchase money, viz, $19.00 ; and if you further believe from the evidence, that at the time of said application and purchase, said J. W. Taylor was an actual settler on said land, using, occupying and cultivating the same, and you further believe that said Taylor (J. W.) continued to live on and use said land from the time of purchase until January 26, 1885, and on said last named date he (Taylor) sold and conveyed said land to plaintiff (C. C. Burke) by his deed of that date, and you further believe from the evidence that plaintiff (C. C. Burke) on or before March 1, 1885, paid to the state one-third of the principal, and the accrued interest up to that date, viz, $20.00, and on or before March 1, 1886, paid or remitted to the proper officer of the state a like sum; and you further believe that J. W. Taylor had, previous to his sale to Burke, actually occupied said land for as long as three years, then you will find for the plaintiff, and so say by your verdict."

*Vaughan & Lary* and *Estes & Henry*, for appellant.

*Todd & Hudgins*, for appellee.

STAYTON, ASSOCIATE JUSTICE.—The first assignment of error raises no question whether the county surveyor was the proper person

through whom to make application for the purchase of school land under the act of April 12, 1883. The objections taken to the admission of the surveyor's books to show that an application to him was made, are untenable. It was not necessary that the book be produced by the surveyor, nor that he should have signed the entry officially. It was shown that the book was one used by the surveyor, came from the proper custody and that the particular entry was made by the witness under instruction from, request by, and authority from the surveyor to make it.

It seems to state such facts as would show that J. W. Taylor had applied to the surveyor to buy the land, and had made such an offer for it, as under the law, would have required the person empowered to sell to put it upon the market for bids. There is no question raised by the assignments, as to whether the land had been classified and a tabulated statement sent to the county, as required by law, nor as to whether it had been appraised, as required by the act of April 6, 1881; and there is evidence showing that the application to buy the land made by J. W. Taylor was duly forwarded, and that the payments required by law to be made, had been made by him or his vendee.

The appellant asked an instruction to the effect that, if J. W. Taylor did not live on the land for the period of three years after he contracted to purchase it, then the jury would find for the appellant, unless they found that the appellee had occupied the land from the time he purchased from Taylor. This charge was refused.

An instruction given by the court, without request, assumed that there must have been a continuous possession by J. W. Taylor, prior to the sale by him to the appellee, for the period of three years, to render that sale valid; and the instruction refused assumes that such an occupation by Taylor, after his purchase, was necessary, unless the appellee continued the occupancy after his purchase. That J. W. Taylor was an actual settler upon the land in the year 1884, when he made application to purchase, and that he so continued to be until after he sold to the appellee in the succeeding year, is not controverted. It appears that he was an actual settler and occupant of the land, claiming some right to be there, from the year 1874, until April, 1885.

The act of April 12, 1883, gave to persons, who, on the first day of January of that year, were actual settlers in good faith, the preferred right to buy given quantities of the land directed to be sold by that act. It provided, also, that agricultural lands should be sold only to actual settlers. General Laws 1883, p. 86.

The eighth section of the act provides "that no sale of agricultural lands shall be perfected until the proposed purchaser files an affidavit

that he intends that the land shall be actually settled within six months; and in case of failure to settle the same within that time, the proposed purchaser shall forfeit the money already paid on the land."

The ninth section provides for the payment of the interest annually, and for the payment of the principal by annual installments, and gives to the purchaser the option to pay all the purchase money after the expiration of seven years; and it then declares "that upon proof of actual occupancy, use and improvement for three consecutive years, the purchaser may be permitted to pay all the purchase money remaining unpaid."

The thirteenth section provides that upon payment of all the purchase money, and interest, the commissioner of the general land office shall issue a patent; but the act nowhere contains any provision that proof of occupancy for any given period of time, in consecutive years or otherwise, shall be made before the patent can issue, as is required in cases in which persons seek to acquire lands under the pre-emption and homestead donation laws. R. S., 3930, 3932, 3933, 3944, 3945, 3948.

We have referred to all the provisions of the act which relate to actual settlement and occupancy, and from this it will be seen that actual settlement is a condition upon which the law authorizes the sale of agricultural lands. The lands in controversy are of that class. We, however, find no provision in the law which requires the actual settler to continue to occupy the land for any period of time further than such as will be requisite to make him an actual settler in good faith. Nor do we find any provision in the law which requires the vendee of a purchaser under the act, to enter and hold possession after he purchases, although the act, in express terms, gives to the purchaser the right to sell the land at any time after he has made the first payment. The provision that purchasers may pay the entire price for the land upon proof of actual occupancy, use and improvements for three consecutive years, indicates an intention to favor persons, who so occupy, by enabling them to procure perfect title sooner than they otherwise could; but does not amount to a declaration that such continuous occupancy is made essential to the procurement of title. In the absence of a law requiring such occupancy, the courts were not authorized to hold it necessary, from the fact that the law declares that agricultural lands shall be sold only to actual settlers, and requires an affidavit from the purchaser "that he intends that the land shall be actually settled within six months."

The appellant asked a further charge, to the effect that it was necessary for the appellee to show that he had continuously occupied the

land since he purchased, and, further, that he had filed with the custodian of the obligation of his vendor, a transfer signed by himself and authenticated and recorded as prescribed by the twelfth section of the act. This the court refused to give. The section of the statute referred to is evidently directory, and a failure to comply with it would not defeat the right to the land if the payments be made as the law requires.

Unless such a transfer be filed the original purchaser may still remain liable on his obligation for the purchase money, and a patent cannot issue to the vendee; but if he make the payments as they fall due, the patent would issue to his vendor, as against whom he might enforce his equitable right after the patent issues. If the legislature had intended that the failure to file such a transfer was to operate a forfeiture of all right under the purchase, it would have so declared and have fixed a time within which, after the sale, the transfer should be filed.

The description of the land sued for is very general; and had its sufficiency been questioned by a special demurrer, it might with propriety have been sustained; but we cannot say that the land may not be identified from the description given in the petition, and the court below did not err in overruling the motion in arrest of judgment which sought to raise this question. It is evident that this case was not well developed by the evidence, but the assignments of error point out no error, and, confining ourselves to them, the judgment must be affirmed.

It is so ordered.

                                                        AFFIRMED.

[Opinion delivered November 6, 1886.]