Florence G. Lee et al. v. N. S. Green.

Decided June 16, 1900.

**1. Actual Settlement—State School Land Purchase.**

　The purchaser's action in going onto a section of State school land, camping there for one night in June, and leaving some few cooking utensils there in a corner of the bank of a creek, was not sufficient to constitute him an actual settler on the land, where he was at the time living, with his family and cattle, six miles from the land on a rented place which he continued to cultivate for that year, although, after such purported settlement and his application to purchase, made the next day, he occasionally visited the section until he removed to it in the latter part of the year, stating to others in the meantime that such section was his home.

**2. State School Land—Forfeiture—Reinstatement.**

　An award of purchase of State school land made by the Commissioner of the General Land Office to one as an actual settler thereon who was not in fact such a settler, will not defeat the right of a prior purchaser of the land whose purchase had been forfeited by the Commissioner for nonpayment of interest, to thereafter have his purchase reinstated under the statute upon tendering the amount in arrears. Rev. Stats., art. 4218f.

**3. Same—Purchase by Married Woman from State's Vendee.**

　Where State school land was purchased under the Act of 1881, and the purchaser, before it was paid out to the State, sold and conveyed it to another, such sale by the State's vendee was not invalid because it was made to a married woman, the evidence warranting the assumption that her husband assented thereto.

Appeal from Wheeler. Tried below before Hon. B. M. Baker.

*H. E. Hoover,* for appellants.

*Browning & Madden,* for appellee.

CONNER, Chief Justice.—The lands involved in this suit consist of sections 22 and 40, State school land, situated in Wheeler County, Texas, appellant, Florence G. Lee, claiming the same as purchaser from the State and as vendee under warranty deed of one Frank Gooden, who became the lawful purchaser thereof from the State of Texas on the 4th day of July, 1881. Appellee claims by virtue of his application and settlement on section 22 made on the 20th day of June, 1898. The case was tried in part upon an agreed statement of facts, and resulted in a judgment for appellee.

　So far as necessary to here notice, it may be stated that the purchase of appellant Florence G. Lee was on the 25th day of November, 1895. No question is made as to the validity of her title, save as the same may have been affected by the subsequent failure to pay interest and the forfeiture hereinafter mentioned. Immediately upon her purchase she, together with her husband, moved upon section 40, and they have continued to occupy and improve it ever since as their home.

　On the 20th day of August, 1897, the Commissioner of the General Land Office forfeited the sales of both sections 22 and 40 for non-payment of interest due the State and unpaid for the years 1895, 1896, and 1897, the forfeiture being declared by said officer by indorsing upon

the original application of Gooden the following: "Land forfeited for nonpayment of interest," signing the same officially.

On the 20th day of June, 1898, appellee M. S. Green made application in due form of law to the Commissioner of the General Land Office to purchase the whole of said sections Nos. 22 and 40 as an actual settler on section No. 22, which application was duly filed in said Commissioner's office and the lands were duly awarded to him by the Commissioner as aforesaid, appellee having duly made his first payment of one fortieth of the principal of the appraised value of all of said lands to the State Treasurer and executed his obligation to the State for the balance of the unpaid purchase money in accordance with law, and has paid all accruing interest thereon as required by law since that time.

On the 21st day of October, 1898, appellant Florence G. Lee tendered to the State Treasurer money sufficient to pay all arrears of interest due the State of Texas on the purchases by virtue of which she claimed, and requested a cancellation of said forfeiture, and that her claim of purchase be reinstated as if no such forfeiture had ever been declared, all of which was refused by said Treasurer and Commissioner of the General Land Office.

The right of the Commissioner to declare the forfeiture we think settled, and the sole question that we deem necessary to determine is the question whether appellee Green was an actual settler within the meaning of the law at the time of his purchase, as found by the court below, it being in effect, as we think, admitted that if he was not such actual settler appellants were entitled to recover.

That actual settlement is a condition precedent to the acquisition of any right under an application and award as was appellee's is not an open question. See Rev. Stats., art. 4218f; Metzler v. Johnson, 1 Texas Civ. App., 137.

Appellee's testimony on this point is as follows: "I came to this country from Oklahoma in May, 1898, bringing with me about ninety head of cattle, wagon and team, my bed, clothing, cooking utensils, etc. I came to Wyant's place on 'Nubbin Ridge," where Converse and Williams were. We leased that land in April before for one year. My purpose in leasing was to hold the cattle there and make a crop. I intended to locate on school land as soon as I could get time to look around. There was about 100 acres under cultivation on Wyant's place. We put in a crop on it, and after we had our crop pitched I started out to look for some land to file on. I found sections 22 and 40 in controversy in this suit. It was about the first of June. Converse was with me at the time, and we had a compass and looked for the corners. I decided to locate on section 22 as my home, and I went on it the 17th of June with the intention and purpose of making it my permanent home. I had my wagon and team with me, bed and cooking utensils also. I stayed all night on the land; camped near where the dugout was afterwards built. I left there the next day and went back to Wyant's place, but left my cooking outfit, consisting of a bake oven,

coffee-pot, skillet, cups, and perhaps some other little things.  When I came away from the section I put them in a nook or corner of the bank where they would not be disturbed.  I then went to Mobeetie and made my application and sent down to the General Land Office, with money to file on the land."

In the strongest light in which the evidence can be placed, this was all that was done prior to the time his application was made.  It was necessary, in order to the acquisition of any right, that he should have been *then* an actual settler.  There was other evidence showing or tending to show that from time to time thereafter appellee would go from Wyant's place to section 22,—sometimes in the daytime and then at night.  Sometimes he would go with his wagon, and again on his horse.  In leaving the land he carried with him his bed, it being necessary, as he says, for his use, and he testifies that his stay at Wyant's place was temporary, and that he called section 22 his home.  No improvements were made, however, until about the 19th or 20th of October, when he began building a dugout, he testifying that he was unable to procure the material with which to build a house until about the 1st of December.  No other witness testifies to having seen Green at any time on section 22, save the witness Converse, who went with him to examine the land and who stayed with him one night upon the land thereafter, though other witnesses testified to instances when appellee would leave the Wyant place with the statement that he was going over home.

We have concluded that the evidence fails to show that appellee was an actual settler at the date of his application to purchase, within the meaning of the law.  His acts subsequent thereto are material only as illustrating the character of the settlement, if any, in fact made prior to the application.  The application requires the statement under oath that he was *then*, i. e., at the time of the making thereof, an actual settler, and we think the acts appearing in the record done by him were merely in the nature of acts of preparation to settle.  We think it evident that at that time his real home was on the Wyant place.  His mere declaration that it was but temporary did not make it otherwise. He was then cultivating a crop there, and continued to do so until the latter part of that year.  The Wyant place was some six miles from section 22 in controversy.  He remained there the greater part of the time, as he says, to cultivate his crop and to care for some eighty or ninety head of cattle of which he was the owner.  He rolled on the section with his wagon in the evening, remained there that night, and rolled away next morning, taking with him his bed and all things else thereon necessary for his actual residence and business, leaving only a bake oven, frying-pan, and perhaps a few other small things in a natural receptacle in the bank of a creek.  He left no visible evidences of residence or settlement, and we can but think that something more than this is required in order to constitute actual settlement under the law.

See Busk v. Lowery, 86 Texas, 128; Baker v. Millman, 77 Texas, 46; Atkeson v. Bilger, 4 Texas Civ. App., 99.

We are cited to the case of Borchers v. Mead, 17 Texas Civil Appeals, 32, in support of appellee's proposition of actual settlement. In that case the appellee testified that he settled on the land there in controversy on the 26th day of December, 1897; that he and his uncle went upon the land on the morning of that day, took dinner there, put down a wagon bed on the land, put up the bows on it, put on a wagon sheet and put his bedding and provision box, with "grub" in it, in the wagon bed; that he set a small heating stove out on the ground near by, took a spool of barbed wire and some cedar posts and inclosed the wagon bed with a fence made thereof; put some Kaffir corn and sorghum inside the inclosure for feed; that he remained on the land until next day, when he returned to Clarendon, making his application to purchase the day following as an actual settler. It further appeared that the appellee in that case was a single man and had no other home, and it was first held that the facts did not constitute him an actual settler, though afterwards on rehearing the contrary conclusion was reached.

We think that case stronger in its facts than the one now before us, in that it appeared that Mead had no other place of abode; that he constructed at once such habitation as he was able to live in, and continued eating and sleeping on the land save when absent in the pursuit of his business of breaking horses, whereas in the case before us even these evidences of settlement and habitation were wanting. Appellee's business and substantially all of his property and actual residence at the time of and after his application were at another and a different place some six miles distant. We think that the most that can be said of the acts relied upon as constituting him an actual settler is that they but manifested an intent upon his part to become such settler at his earliest convenience thereafter. A mere claim coupled with an intent to constitute school land a home does not meet the requirements of the law. It is subject to sale to "actual settlers only," and the statute requires the purchaser to state under oath that he desires to purchase "for a home." The desire, purpose, and intent, therefore, must be coupled with such acts as constitute actual settlement in fact.

It follows from our conclusion that we are of opinion that no right to the land in controversy was shown in appellee, and that appellant Florence G. Lee was entitled to have her claim reinstated, as she made the effort to do, as provided in article 4218f of the Revised Statutes.

It is accordingly ordered that the judgment below be reversed and here rendered for the appellants.

*Reversed and rendered.*

### ON MOTION FOR REHEARING.

It is specifically admitted in the record that one Goodin, in July, 1881, duly purchased the land in controversy from the State under the

Act of 1879, as amended by the Act of 1881, he complying with the law in every particular. It is also admitted that appellant, Mrs. Lee, became the purchaser of this land by regular chain of transfers from Goddin down to herself. On the original hearing we proceeded on the assumption that it was admitted that appellants would be entitled to recover under this purchase, unless her right to reinstate the Goodin account, as she attempted to do on October 21, 1898, was cut off by the intervening settlement and purchase of appellee Green. We therefore concluded that the question of a married woman's right to purchase State school lands, as presented in the record, related alone to her attempted purchase from the State in November, 1898, and that its determination became immaterial in view of the conclusion reached by us on other propositions. This conclusion was, perhaps, too strictly so limited. At all events it is now insisted that, irrespective of the question of Green's actual settlement, Mrs. Lee's attempted purchase under Goodin was invalid by reason of the fact that she was a married woman. Assuming that the question is involved, and should have been determined, we see no sufficient reason for the contention that Mrs. Lee's purchase under Goodin was invalidated by the mere fact of her coverture. The only authority cited on this proposition is the case of Walker v. Rogan, 93 Texas, 248. In that case it was held by our Supreme Court that a purchase of State school lands by a minor between 11 and 12 years of age was void. But the facts now before us do not show any invalidity in the purchase of Goodin, the original purchaser from the State, and we feel no disposition to extend the doctrine of the case cited. The express privilege is given such original purchasers of school lands to make transfers thereof. A transfer by an original purchaser to a married woman is not inhibited in terms, nor is a forfeiture of title declared therefor. In the case of Pitts v. Elser, 87 Texas, 347, our Supreme Court, in answering a certified question from this court, among other things, uses the following language:

"In this State the right of a married woman to acquire and hold property, real and personal, either by gift, devise, descent, or purchase, is as absolute as that of her husband. She may with his consent mortgage her real estate to secure his debts, or she may give her personal property to him, or any other person. If she contract to buy on a credit and execute a note for the price, she may or she may not, as she may elect, proceed with the contract, and the person contracting with her can not refuse to carry out the agreement because she is a married woman. If she elect to abandon the contract she can not be compelled to pay what she has promised, but she must return what she has received."

This general language seems applicable to the present case. The record shows that immediately after the purchase of Mrs. Lee by transfers under Goodin she, together with her husband, moved upon and occupied section 40, claiming the same, together with section 22, under

said purchase.   This occupancy was continued and title thereunder asserted down to the very time of the trial by both husband and wife, and we must assume that such purchase on the part of Mrs. Lee was assented to on the part of her husband.   Under somewhat similar circumstances we upheld a wife's purchase direct from the State.   See Barnett v. Murry, 54 S. W. Rep., 785.

It is true, as insisted, that our law provides that such subsequent vendee may file his own obligation with the Commissioner of the General Land Office, together with the duly authenticated conveyance, or transfer, if any there be, duly recorded in the county where the land lies, etc., and thereupon the original obligation may be surrendered or canceled, and the vendee become the purchaser direct from the State, and be subject to all the obligations and penalties prescribed by law, the original purchaser in such event being absolved from further liability.   But the law nowhere declares the title of such subsequent vendee shall be forfeited by failure to so proceed.

We think the motion for rehearing should be overruled, and it is so ordered.

*Overruled.*

Writ of error refused.