JOSEPH SPENCE, JR., ADMINISTRATOR, v. MRS. M. F. MITCHELL.

No. 1140. Decided November 10, 1902.

**1.—School Land—Additional Section—Sale—Settlement by Vendee.**

Purchasers of school land may sell same before completing the required three years residence (Acts of 1895, page 66, section 10), but only to actual settlers desiring to purchase for a home, who are thereupon to be substituted for the original purchasers; the sale of an "additional section" purchased by an actual settler upon another (home) section, is invalid unless made to one actually settling on the tract so sold, though he be also one entitled to purchase it as additional land by virtue of being himself a settler on another school section within the radius of five miles. (Pp. 46, 47.)

**2.—Same.**

One applying to purchase an "additional section" of school land within a radius of five miles from his "home" section, can not be relieved from making the first payment by being substituted to the rights of another who had previously purchased it as an "additional section" to his own "home" place, had made the first payment, and had then sold to the party seeking such substitution. (Pp. 47, 48.)

**3.—Same—Validating Act.**

The validating Act of May 27, 1899 (Acts 1899, page 259), applies only to those who, failing to settle on school land and to make the first payment at the time of making application to purchase, have settled and made such payment within six months thereafter. It does not validate the title of one who has never paid the first installment of the purchase money, nor is it applicable to a purchaser of school lands additional to his home section. (P. 48.)

**4.—School Land—Substitution of Purchaser.**

Whether the right of a vendee of a purchaser of school land who has made actual settlement and substituted his own obligations for those of his vendor depends upon actual settlement having been made by his vendor, is questioned but not decided. (P. 46.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Tom Green County.

Spence appealed from a judgment for defendant in a suit of trespass to try title brought by him against Mrs. Mitchell. The judgment was affirmed and he then obtained a writ of error.

*A. R. Burges,* for plaintiff in error.—The court erred in rendering judgment for defendant, M. F. Mitchell, and against plaintiff's intestate under the facts found by the court, because under all of the facts proven, and admitted and found by the court, plaintiff showed the superior title to the land sued for, and the judgment of the court should have been for plaintiff and the estate he represents. Gen. Laws, 1895, pp. 63-75; Smith v. Rothe, 55 S. W. Rep., 754; Jones v. Dowlen, 26 Texas Civ. App., 253; Hardman v. Crawford, 95 Texas, 199; Butler v. Daniel, 54 S. W. Rep., 29.

The acceptance of the application and obligation of J. M. Franklin to purchase section No. 6, B. S. & F., as additonal land to his home tract section No. 170, Washington County Railway Company, and its substitution for that of A. J. Taylor for the same land, was the execution of a new and separate contract by the State to sell to J. M. Franklin said

section No. 6 as additional land to his home tract, and upon a fulfillment of the terms of said contract said Franklin was entitled to receive title from the State. Laws 1895, ch. 47, sec. 10, p. 66.

The law of 1895 under which J. M. Franklin purchased the land in suit, did not require a vendee of the purchaser of additional lands to reside on and actually occupy the additional lands so transferred to him by the original purchaser from the State before three years occupancy of the home tract, and article 4218ff (Act of May 7, 1897) or any other act of the Legislature which authorized a forfeiture for such failure to so actually occupy the additional lands, was and is in contravention of section 10, article 1, of the Constitution of the United States, and of section 16, article 1, of the Constitution of this State, as impairing the obligation of the contract; and the forfeiture declared on October 25, 1900, by the Commissioner of the General Land Office of the contract under which appellant held and claimed title, having been made by virtue of the Act of May 7, 1897 (article 4218ff), was therefore illegal and void, and did not affect appellant's title. Laws 1895, ch. 47, secs. 9, 10, 11, pp. 65 to 67; Laws 1897, ch. 129, art. 4218ff, p. 185; Standifer v. Wilson, 54 S. W. Rep., 898; Building and Loan Assn. v. Hardy, 86 Texas, 610; Cattle Co. v. Bacon, 79 Texas, 5; Bronson v. Kinzie, 1 How., 311; Suth. Stat. Con., sec. 474; Miller on Const. U. S., p. 531; 2 Tucker's Const. U. S., 828, 840; Cooley's Const. Lim., 332-346.

The application and obligation of J. M. Franklin to purchase said section No. 6 was made in accordance with the law of 1895, and all interest payments that have become due thereon have been made, and the cancellation by the Commissioner of the obligation of A. J. Taylor given for said section No. 6 three years after it had been previously canceled by his predecessor in office, and three years after it had been substituted in the Land Office by the obligation of J. M. Franklin given for said section No. 6, could not have the effect of canceling the State's contract with said Franklin for abandonment by Franklin, and the consequent sale of said section No. 6 to the appellee Mitchell, by the Commissioner of the Land Office, while the obligation of said Franklin given for said land was and is a valid and subsisting contract in the hands of the State, was illegal and void.

The court erred in holding as matter of law that plaintiff was not entitled to recover under the facts proven and admitted and found by the court, because plaintiff's title, even if invalid originally, was validated by the Act of the Legislature approved May 27, 1899, chapter 150 of the Laws of 1899, page 259. Gen. Laws 1899, ch. 150, p. 259; Dabbs v. Rothe, 60 S. W. Rep., 811; Jones v. Dowlen, 63 S. W. Rep., 938; Garrett v. Findlater, 53 S. W. Rep., 839.

*D. D. Wallace,* for defendant in error.—The facts in this case are that Hammack purchased the northeast quarter of section 4 on the 10th day of September, 1895, and sold to A. J. Taylor, May 11, 1896. Taylor purchased the land in suit, December 28, 1896, and sold and conveyed it

to Franklin on the 16th day of February, 1897, and that Franklin was an actual settler on the south half of the southwest quarter of section 170, July 10, 1897. The record does not show where Franklin lived between these dates, and it will not help him to presume that he was living on the land in suit during this time. If such was the case he abandoned the land before the three years occupancy had expired. The plaintiff claims, however, that if he can not hold the land under the Taylor title on account of his failure to comply with the statute requiring him to become an actual settler in good faith thereon when he purchased it, still he ought to recover under his application to purchase the land in suit as additional land as an actual settler on the south half of the southwest quarter of section No. 170, made July 10, 1897.

In reply to this we will say that the land was not on the market, having been previously sold to Taylor; that the land was never awarded to him, and that he recognized the Taylor title by substituting his obligation for Taylor's and paying interest under the Taylor purchase. Hardman v. Crawford, supra. On an inspection of the record we think the court will conclude that the case has been correctly disposed of, notwithstanding error may have been committed in excluding the proof of occupancy as complained of by plaintiff in his first assignment of errors.

GAINES, CHIEF JUSTICE.—This is an action of trespass to try title, and was brought by the plaintiff in error as administrator of the estate of J. M. Franklin, deceased, to recover of T. H. Dawson and Mrs. M. F. Mitchell a certain section of school land known as section 6, surveyed in the name of Beaty, Seale & Forwood. The defendant Dawson disclaimed. Mrs. Mitchell pleaded not guilty and upon the trial judgment was rendered in her favor.

Upon appeal the judgment was affirmed by the Court of Civil Appeals.

The case was tried without a jury and the trial judge filed his conclusions of fact and law. There is no statement of the facts in the record.

From the conclusions of fact so found we make the following statement of the case:

Besides section 6 (the land in controversy) there are two other sections of school land mentioned in the findings, namely: section 4, in the name of Adams, Beaty & Moulton, and section 170, surveyed on a certificate issued to the Washington County Railroad Company. These lands were all duly classified and put upon the market for sale. We shall hereafter designate them by their numbers only.

On September 10, 1895, J. W. Hammack applied to purchase the northeast quarter of section 4, and made the cash payment and filed the obligations required by law. The land was awarded to him by the Commissioner. On May 11, 1896, he conveyed the one-fourth section to A. J. Taylor, and Taylor's obligations were thereafter substituted in the Land Office for that of Hammack. Taylor on the 15th of March, 1897, sold to one Wells.

On December 28, 1896, A. J. Taylor, as an actual settler on the northeast quarter of section 4, applied to purchase section 6 (the land in controversy) as additonal lands to his home section, and also made the payments and filed the obligations required by law. The land was awarded to him. Section 6 is within a radius of five miles of the quarter section before mentioned. Taylor was an actual settler on section 4 and continued to reside thereon until February 16, 1897, when he sold section 6 to J. M. Franklin, the intestate of the plaintiff in error.

So far as we can see from the findings of the court, Franklin took no steps to perfect his title under the purchase from Taylor until July 10, 1897, when he made application to purchase section 6 as additonal lands to the south half of the southwest quarter of section 170, upon which he resided as a purchaser under one Dean, who was an original purchaser from the State. This application to purchase was accompanied by the deed from Taylor to him, together with his obligation for the deferred payments of the purchase money. The cash payment of onefortieth of the appraised value was not sent up with the application and has never been paid. The Commissioner of the General Land Office, however, substituted his obligation for that of Taylor and the interest under the Taylor purchase has been regularly paid.

The defendant, Mrs. Mitchell, made application to purchase section 6 in 1900 and the Commissioner awarded the land to her.

The trial court held, that since the title of Franklin, under his purchase from Taylor, depended upon that of Hammack, and it was not shown that Hammack was a settler upon the northeast quarter of section 4 when he made application to purchase it, the plaintiff could not recover. The Court of Civil Appeals made substantially the same ruling upon that branch of the title. We were not inclined to concur in this view, and therefore granted the writ of error. But since we now think that the judgment must be affirmed upon other grounds, we do not find it necessary to decide that question.

At the time Franklin purchased from Taylor, he was not an actual settler upon section 6. He then resided upon the south half of the southwest quarter of section 170 and continued to reside there for several months thereafter. Section 10 of the Act of April, 1895, permitted purchasers of school lands to sell their lands—but as we think, to actual settlers only. So much of that section as bears upon the question is as follows:

"Purchasers may also sell their lands, or a part of the same, in quantities of forty acres or multiples thereof, at any time after the sale is effected under this act, and in such cases the vendee, or any subsequent vendee, or his heirs or legatees, shall file his own obligation with the Commissioner of the General Land Office, together with the duly authenticated conveyance or transfer from the original purchaser and the intermediate vendee's conveyance or transfer, if any there be, duly recorded in the county where the land lies or to which said county may be attached for judicial purposes, together with his affidavit, in case three

years residence has not already been had upon said land and proof made of that fact, stating that he desires to purchase the land for a home, and that he has in good faith settled thereon, and that he has not acted in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in the purchase, save himself, and thereupon the original obligation shall be surrendered or canceled or properly credited, as the case may be, and the vendee shall become the purchaser direct from the State, and be subject to all the obligations and penalties prescribed by this Act, and the original purchaser shall be absolved in whole or in part, as the case may be, from further liability thereon."

In the case of Hardman v. Crawford, 95 Texas, 199, this language came before this court for construction, and Mr. Justice Brown, speaking for the court in his opinion, says:

"The statute authorizes the actual settler to convey to another, but requires of the vendee to make the same character of settlement upon the land as was required of the original purchaser. In other words, the State allows an actual settler to be substituted by another with the same qualifications, and performing the same duties, but there is no provision by which the land once sold to and occupied by an actual settler can be transferred, before the expiration of three years' occupancy, to another person, unless the State at the same time acquires another actual settler in place of the one that is released. This is a matter of statutory provision, and so plainly expressed as to leave no room for construction." The facts of that case are different from the facts of this, but we think the language equally applicable here. It may be urged, that since a purchaser or owner of school lands actually settled thereon is permitted to buy additional lands without being required to reside upon the lands so purchased, no good reason exists why he should not be allowed to purchase additional lands from another purchaser and be in like manner relieved from the condition of settlement. But the evident legislative policy has been to sell the lands to actual occupants, and thereby to secure the settlement of the country and a consequent enhancement in value of the lands unsold, and therefore it can hardly be said that such policy may not have actuated the Legislature in limiting the right of purchasers to sell their lands to actual settlers. But however difficult it may be to see a reason for the restriction, we think the provisions of the statute are so definitely expressed as to leave no doubt as to what was intended by them. For the reason, that when Franklin took a conveyance of section 6 from Taylor, he did not settle upon that section and did not otherwise comply with the provisions of the statute already quoted, we conclude that he acquired no title by virtue of that conveyance.

Nor do we think that he acquired any title by reason of his application of July 10, 1896, to purchase the section as additional lands to his home tract. It may be that if, when he forwarded his application and obligation, he had paid one-fortieth of the purchase money, he would have secured the rights of a purchaser. But not having made the cash

payment, he failed to comply with the requirements of the statute as to original purchasers.

But it is insisted that his title was made good by the validating Act of 1899. That act reads in part as follows: "That any applicant who has, prior to the 1st day of January, 1899, made application to purchase public school land, university, or asylum lands, and within six months after the date of such application to purchase made actual settlement and first payment thereon and executed his obligation for the balance of the purchase money, and the said land has been awarded to such applicant by the Commissioner of the General Land Office, under the several acts of the Legislature relating to the sale of such lands, and the said award and account as to interest payments on such land is in good standing, such award and sale is hereby validated." It is evident from this statute that it applies only to those who have failed to settle on the land sought to be purchased and to make the first payment at the time of the application, and who have settled and made such payment within six months thereafter. Franklin settled on the land within the six months but has never paid the first installment of the purchase money. Besides, the statute does not seem applicable to a purchaser of additional lands, since the settlement of such purchaser is not required.

For the reasons given we think the judgment ought to be affirmed and it is so ordered.

*Affirmed.*