## PAYNE v. COX.[†]

(Court of Civil Appeals of Texas. San Antonio.
Dec. 20, 1911. Rehearing Denied
Jan. 17, 1912.)

**1. ESCROWS (§ 1*)—DEPOSIT—WHAT CONSTITUTES.**

The grantor by merely leaving a deed with his own clerk after executing it, without instructions for its delivery or without the grantee's knowledge, did not deliver it in escrow.

[Ed. Note.—For other cases, see Escrows, Cent. Dig. §§ 1–3, 5; Dec. Dig. § 1.*]

**2. DEEDS (§ 58*)—DELIVERY—KNOWLEDGE OF GRANTEE.**

There was no delivery of a deed where grantor after executing it merely left it with his own clerk without instructions for its delivery or without the grantee's knowledge.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 130–135; Dec. Dig. § 58.*]

**3. PUBLIC LANDS (§ 178*)—CONVEYANCE BY PURCHASER—TIME OF CONVEYANCE.**

Neither the date of the deed to his grantee, executed by a purchaser of public land, nor of his acknowledgment thereof, would control as to whether the deed was void as being executed before the filing of an affidavit of settlement as required; the actual date on which the deed was filed in the recorder's office being controlling, that being the manner in which delivery was made to the grantee.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 178.*]

**4. PUBLIC LANDS (§ 178*)—CONVEYANCE BY PURCHASER—EVIDENCE.**

Evidence in trespass to try title brought by one purchasing from a purchaser of state land, *held* to show that the intention of plaintiff and his grantor was that the land should not be conveyed prior to the grantor's filing his notice of settlement in the land office.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 178.*]

**5. CONTRACTS (§ 318*)—POLICY OF LAW.**

Forfeitures are not favored, and the cause and time of forfeiture should be clearly fixed in order to work a forfeiture under an instrument.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 318.*]

**6. PUBLIC LANDS (§ 178*)—STATE LANDS—FORFEITURE OF SUBSTITUTED PURCHASER—FAILURE TO FILE APPLICATION.**

Rev. St. 1895, art. 4218k, authorizes purchasers of state lands to sell their lands, and requires the vendee of a purchaser to file his own obligation, together with the transfer to him duly recorded, together with his affidavit, in case three years' residence has not already been had, and proof thereof made, stating that he desires to purchase the land for a home, and has in good faith settled thereon, and thereupon the original obligation shall be surrendered or canceled and the vendee shall become a purchaser direct from the state, and be subject to all the penalties and obligations prescribed. *Held,* that the claim of one purchasing from the original purchaser after the settlement was complete, and an affidavit of settlement was filed and who continued his settlement and paid all dues and made valuable improvements thereon, would not be forfeited because he did not file the application to become a substituted purchaser.

[Ed. Note.—For other cases, see. Public Lands, Dec. Dig. § 178.*]

Appeal from District Court, Kinney County; W. C. Douglas, Judge.

Action by Frank Payne against G. C. Cox. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

Joseph Jones and Geo. M. Thurmond, for appellant. E. R. Pedigo, G. B. Fenley, and Claude Lawrence, for appellee.

COBBS, J. This is a suit in the ordinary form of trespass to try title involving two sections of state school lands, claimed by both parties by virtue of purchases from the state under the act of the Legislature approved April 15, 1905. General Laws 29th Leg. 162. Appellee answered by general denial, general demurrers and plea of not guilty. The cause was tried without a jury and judgment rendered in favor of Cox, the appellee. The facts, which were agreed to, are as follows:

"That on January 31, 1907, section 14, block B, certificate 1,196, A. B. & M., 640 acres of state land; section 8, block B, certificate 1,198, A. B. & M., 640 acres state land; section 56, block B, certificate 110, R. & T. Co., 640 acres; and section 6, block B, certificate 1,203, A. B. & M., 640 acres—all being state school land, all in Kinney county, Tex., had been duly and legally classified and appraised, and notice had been transmitted by the Commissioner of the General Land Office to the county clerk of Kinney county, and that the same was then and there duly and regularly on the market.

"That on January 31, 1907, W. N. Fleming applied for section 14 as a home, and sections 6 and 8 and 56 aforesaid, as additional thereto, which said additional land was in a radius of five miles of section 14, by applications which were in all respects in conformity with law and were transmitted to the Land Office at Austin, Tex., in the manner required by law, and were filed in said Land Office February 1, 1907, and each of which said applications were accompanied by the affidavit of said Fleming, which was required to be by him made under the law governing the sale of state school lands then in force and under which said applications to purchase were made, and he also paid into the state treasury the one-fortieth of the purchase price due upon each tract in cash, and executed his obligations for the balance of said purchase price in manner and form as by such law required, all of which were filed in the General Land Office and were a part of said applications.

"That at the time of the making of said applications the applicant, W. N. Fleming, was then and there a man legally entitled to buy the same, and that on the 27th day of February, 1907, said four sections of land were awarded to said W. N. Fleming on his applications aforesaid, section 14, block B, certificate 1,196, A. B. & M., for $2.75 per acre; section 8, block B, certificate 1,198, A.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

†Writ of error granted by Supreme Court.

B. & M., at $3.50 per acre; section 6, block B, certificate 1,203, A. B. & M., at $2.75 per acre; section 56, block B, certificate 110, R. & T. Co., at $3.50 per acre; that at the time of making and filing the application aforesaid W. N. Fleming paid in cash to the Treasurer of the State of Texas the first one-fortieth of the purchase money due the state thereon, and executed his obligations in writing as required by law for the balance due the state of said purchase money upon each of said sections.

"Said W. N. Fleming on May 20, 1907, began to make his improvements on section 14, his home section aforesaid, and that on the 24th day of May, 1907, he actually in person and in good faith settled upon such section as his home, and actually and continuously resided upon and occupied same in good faith as his home until June 17, 1907.

"That on June 5, 1907, said W. N. Fleming made, signed, and acknowledged before F. W. Church, a notary public of Bexar county, Tex., his deed, in writing, to Frank Payne, plaintiff herein, a copy of which deed is as follows:

" 'The State of Texas, County of Kinney— Know all men by these presents: That I, W. N. Fleming, of the county of Kinney, state of Texas, for and in consideration of the sum of twelve thousand eight hundred ($12,800.00) dollars to me in hand paid and secured to be paid by Frank Payne as follows: One promissory vendor's lien note for the sum of five thousand ($5,000.00) dollars of even date herewith, due on or before three years after date, bearing interest from date until paid at the rate of 8 per cent. per annum, payable annually, all past due interest to bear interest from date same becomes due, until paid at 8 per cent. per annum, and providing for attorney's fees of 10 per cent. and the assumption of the payment of the four notes or obligations given by this vendor, to the state of Texas as follows: Two for the sum of seventeen hundred and sixteen ($1,716.00) each, and two for the sum of twenty-one hundred and eighty-four ($2,184.00) each, all of said obligations bearing interest at the rate of 3 per cent. per annum, interest payable annually on November 1st each year, to secure the payment whereof a vendor's lien is retained in this conveyance, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said Frank Payne of the county of Kinney, state of Texas, all that certain four (4) tracts or parcels of land situated in the county of Kinney and state of Texas described as follows, to wit:

" 'Section No. 14 in block B, certificate 1,196, originally granted to Adams, Beaty and Moulton by the state of Texas and awarded to this vendor by the state of Texas, February 27th, A. D. 1907, containing 640 acres of land.

" 'Section No. 8 in block B, certificate 1,198, originally granted to Adams, Beaty and Moulton by the state of Texas and awarded to this vendor by the state of Texas, February 27th, A. D. 1907, containing 640 acres of land.

" 'Section No. 6 in block B, certificate 1,203, originally granted to Adams, Beaty and Moulton by the state of Texas and awarded to this vendor by the state of Texas, February 27th, A. D. 1907, containing 640 acres of land.

" 'Section No. 56 in block ———, certificate No. 110, originally granted to Rush Transportation Co., and awarded to this vendor by the state of Texas, February 27th, A. D. 1907, containing 640 acres of land.

" 'To have and to hold the above-described premises together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Frank Payne, his heirs and assigns, forever. And I hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Frank Payne, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under me. But it is expressly agreed and stipulated that the vendor's lien is retained against the above-described property, premises and improvements, until above-described note and all interest thereon are fully paid, according to its face and tenor, effect and reading, when this deed shall become absolute.

" 'Witness my hand at San Antonio this 5th day of June, A. D. 1907. W. N. Fleming.

" 'The State of Texas, County of Bexar: Before me, F. W. Church, a notary public in and for Bexar county, Texas, on this day personally appeared W. N. Fleming, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed. Given under my hand and seal of office this 5th day of June, A. D. 1907. [Seal.] F. W. Church, Notary Public, Bexar County, Texas.

" 'The State of Texas, County of Kinney: I, Charles Kartes, clerk of the county court of said county, do hereby certify that the foregoing instrument of writing dated on the 5th day of June, A. D. 1907, with its certificate of authentication was filed for record in my office this 17th day of June, A. D. 1907, at 5 o'clock, p. m., and duly recorded this 5th day of July, A. D. 1907, at 10:30 o'clock a. m. in the Deed Records of said county in Volume A11, on pages 555 and 556.

" 'Witness my hand and the seal of the county court of said county, at office in Brackett, the day and year last above written. [Seal.] Charles Kartes, Clerk County Court, Kinney County, Texas.

" 'The State of Texas, County of Kinney: I, Charles Kartes, clerk of the county court within and for Kinney county and state of Texas, do hereby certify that the foregoing two pages is a true and correct copy of a

deed from W. N. Fleming to Frank Payne, dated June 5th, 1907, as appears upon the record of my office in Vol. A11, pages 555 and 556. To certify which I hereunto affix my official signature and seal of office at Brackett, Texas, this 3d day of December, A. D. 1907. Charles Kartes, Clerk County Court, Kinney County, Texas.'

"That at the time of the signing and acknowledging of said deed the said W. N. Fleming had executed his affidavit of settlement as required by law, but that same misdescribed the section on which the said W. N. Fleming had settled as aforesaid, which fact was not discovered until after W. N. Fleming had left San Antonio, Tex., where said deed was signed and acknowledged and that such affidavit of settlement was never forwarded to the Land Office; that at the time said deed was signed and acknowledged by said W. N. Fleming, the same was left by him, the said W. N. Fleming, in his office in the city of San Antonio, Tex., which said office was in charge of F. W. Church, who was then an employé of said Fleming in the capacity of bookkeeper and secretary, to be by said Church retained in said office and not delivered to any one until the affidavit of settlement by said W. N. Fleming upon his home tract, to wit, section 14, block B, certificate 1,196, A. B. & M. had been actually filed in the General Land Office of the state, and said W. N. Fleming instructed said F. W. Church at the time of so signing and acknowledging said deed, that said deed should be so retained and held in said office, and said Fleming at the time he signed and acknowledged said deed did not intend that same should be delivered to the grantee therein or any other person for the use of such grantee, until his affidavit of settlement had been actually filed in the General Land Office of the state of Texas, but intended and instructed said Church that no delivery thereof was to be made until after such affidavit of settlement had been so filed.

"That upon discovery of the mistake in the description of the home section in the affidavit aforesaid, the said W. N. Fleming on the 8th day of June, 1907, made and executed at Victoria, Tex., an affidavit of settlement in the form required by law and forwarded the same to said F. W. Church at San Antonio, Tex., who mailed the same to the Commissioner of the General Land Office at Austin, Tex., from San Antonio, Tex., on the 14th day of June, 1907, and that by due course of mail such affidavit should have reached Austin on the following day, to wit, June 15, 1907.

"That such affidavit was actually filed in the Land Office at or about 8 o'clock on the morning of the 17th of June, 1907. At or about 9 o'clock on the morning of June 17, 1907, F. W. Church, without additional instructions from W. N. Fleming, mailed the said deed to the county clerk of Kinney coun-ty, Tex., and that the county clerk received the same and filed the same for record at 5 o'clock on the evening of the 17th day of June, 1907.

"That upon the 17th day of June, 1907, Frank Payne, the plaintiff herein, moved upon and actually settled upon section 14, block B, certificate 1,196, A. B. & M. in good faith as his home, and has continuously since said date actually resided thereon as his home in compliance with law and all the requirements thereof, except as stated in paragraph 12 hereof; and he and his vendor have placed upon said home section permanent inprovements of more than the value of $300 as by law required.

"That Frank Payne, the plaintiff herein, has never applied to the state to purchase said land from the state, nor to substitute himself for and instead of W. N. Fleming; that he has never executed any application to the state for said four sections of land, and that he has never executed or tendered to the state his obligation in writing for the outstanding obligations due the state for said land; that he has never made, executed, or filed in the General Land Office at Austin, Tex., his affidavit in writing that he was or had become in person an actual bona fide settler on such land as his home.

"That the deed aforesaid was never transmitted to the General Land Office by the said Payne.

"That on May 20, 1909, section 558, block B, certificate 677, H. E. & W. T. Ry. Co., 640 acres, section 556, block 5, certificate 4—932, G. C. & S. F. Ry. Co., 640 acres, was duly and regularly classified as mineral dry agricultural land and on the market at $8 per acre.

"That on May 20, 1909, Frank Payne caused to be filed in the General Land Office of the state his application in manner and form as required by law, same being accompanied by the affidavit by law required to be made, to purchase said two sections described in paragraph 14 of this agreement of facts, as additional land to section 14, certificate 1,196, A. B. & M., 640 acres in Kinney county, Tex., reciting 'which has been purchased from the state' and at the same time paid into the state treasury the cash payment of one-fortieth of the purchase price under such applications, and executed his obligations for the balance of such purchase price in manner, form, and amount as required by law; that at the time said applications to purchase said sections were so made, the said Frank Payne was an actual resident upon and occupant of section 14 above described, and said home tract was within a radius of five miles of said sections 556 and 558, the land in controversy; that said Payne was then holding and claiming said section 14, under his deed from W. N. Fleming; that on the 10th day of June, 1909, the Commissioner of the General Land Office accepted said applications of said Payne, and awarded to him the said

two sections of land, to wit, section 556, block 5, certificate 4—932, G. C. & S. F. Ry. Co., and section 558, block 5, certificate 677, H. E. & W. T. Ry. Co., each containing 640 acres, and situated in Kinney county, Tex., at the appraised value of $8 per acre; that said award was in all respects legally made, and said Payne was entitled to same under his applications, unless his title to his home section (section 14) had failed.

"That the deed from W. N. Fleming to Frank Payne was never forwarded to the Land Office by the said Frank Payne, but that a certified copy of such deed was filed in the General Land Office on the 6th day of December, 1909.

"That on February 23, 1910, the Commissioner of the Land Office forfeited the sale of the first-described four sections of land to W. N. Fleming on account of agreement to transfer and transfer executed before affidavit of settlement was filed in Land Office; that he marked on the back of said files such memorandum of such forfeiture, and that he notified the clerk that such sale to Fleming of such land was forfeited, stating his reasons therefor, and that such four sections were duly and legally reclassified and reappraised and placed upon the market for actual settlers in the manner as required by law, if such forfeiture of the prior sale to Payne had been lawfully made and entered of record.

"That on the same date, to wit, February 23, 1910, the Land Commissioner forfeited sections 556 and 558 aforesaid, being the land in controversy in this suit, and awarded the said Frank Payne as aforesaid, on account of erroneous sale, and duly notified the clerk of Kinney county, Tex., as is required by law of such cancellation, and that the Commissioner reappraised and reclassified said two sections, and duly notified the clerk of said classification and reappraisement, and placed such two sections of land upon the market in the manner as required by law.

"That on March 7, 1910, section 558, certificate 677, H. E. & W. T. Ry. Co., 640 acres, section 556, certificate 4—932, G. C. & S. F. Ry. Co., 640 acres, was by the Land Commissioner awarded to the defendant, G. C. Cox, upon his applications in strict compliance with law, as mineral and dry agricultural land at $10 an acre, the said defendant, G. C. Cox, having theretofore executed his application for same as a home, and executing his obligations in writing for the balance due the state thereon and the payment by him to the State Treasurer of the first one-fortieth cash payment as is required by law; that at the time of such application of the said G. C. Cox, the land was duly and legally upon the market as mineral dry agricultural land and appraised at $10 per acre, if the forfeiture of the prior sale to Payne had been legally declared and entered of record; that within the time and in the manner as required by law the defendant, G. C. Cox, settled upon said land as his home, and on May 30, 1910, filed in the General Land Office his affidavit of settlement as is required by law; that he has continued to reside on said land as his home in the manner as required by law since said date of his said settlement.

"It is agreed that the account in the General Land Office for the first four sections hereinbefore mentioned stood in the name of W. N. Fleming until the date of its cancellation, and that Frank Payne paid the annual interest due thereon regularly up to the date of the said cancellation and has tendered to the state the accrued interest on same up to and including this date, but that such tender of such interest has been refused by the Commissioner of the General Land Office.

"That said Frank Payne since the date of the award to him by the Commissioner of the two sections of land in controversy aforesaid, has paid all the interest due thereon to the state up to the time of the cancellation of such awards; that he has tendered the interest thereon from the date of the cancellation up to and including this date, which tender has been refused by the Commissioner of the General Land Office. That the first four sections of land herein mentioned, being the lands transferred in said deed from W. N. Fleming to Frank Payne, were subsequent to the cancellation of Fleming's awards of same duly reclassified and appraised and placed regularly upon the market and awarded to a third party by the state, if the forfeiture of the prior sale to Fleming, the vendor of Payne, had been legally made and entered of record, as Payne has forfeited his right thereto by failure to be substituted as provided by law upon legal applications and obligations and by payment of one-fortieth cash, who actually settled thereon within the time required by law, filed his affidavit of such settlement in the terms and within the time required by law, and has continued to reside thereon since the date of his settlement; that G. C. Cox, the defendant herein, has paid all interest on the two sections of land in controversy, and that his account is in good standing on the records of the General Land Office and that the third party to whom the first four sections hereinbefore stated were awarded has complied with the law with reference to the payment of interest, and that his account to said first four sections of land is in good standing on the records of the General Land Office. It is further agreed that neither W. N. Fleming nor Frank Payne have purchased any school lands from the state prior to or since the purchase hereinbefore stated."

## Opinion.

This case, on the facts and upon the contentions of the parties, presents two questions for adjudication:

The first question is upon the rights ac-

quired by appellant under his purchase from Fleming. The act of the Legislature, approved April 15, 1905, supra, gives to the Commissioner the right to forfeit land for certain purposes. The law provides and requires that "the applicant shall have ninety days from the date of the acceptance of his application within which to actually settle upon the land so purchased, and he shall within thirty days after the expiration of said ninety days given within which to make settlement, file in the Land Office his affidavit that he has in good faith actually in person settled upon the land purchased by him." Upon his failure to do that the Land Commissioner is given the power to forfeit the land and place the same on the market for sale. There is no contention in this case, but what that provision of the statute was complied with, and that Fleming filed his affidavit within the time required by law showing his actual settlement.

The next cause of forfeiture is under the provision that "a purchaser shall not transfer his land prior to his actual settlement thereon and evidence of that fact filed, as herein provided, and any attempt to so transfer by deed, bond or title, or other agreement shall operate as a forfeiture of the land to the fund to which same belongs, together with all the payments made thereon."

Now the question arises whether cause for forfeiture existed on the ground that the purchaser transferred his land or attempted to so transfer by deed, bond, or title or other agreement prior to the date of settlement. It is said in Patton v. Terrell, 101 Tex. 221, 105 S. W. 1115: "He rather contends for the declaration by this court, as a rule of law, that he must act upon the date of the deed filed in his office, and that, therefore, such date ought to be taken as conclusive in favor of the forfeiture. This view is not warranted by the statute and we cannot adopt it. To avoid misapprehension, we think it proper to say that our action is not based upon a weighing of the affidavit of the plaintiff as evidence against that afforded by the date of the deed and acknowledgment. That this court could not do, if there were an issue. We simply take the facts stated in the petition as established because they are in no way controverted." The action of the Commissioner does not, of course, control the facts as they really existed. In this case, briefly put, Fleming executed his affidavit of settlement as the law required and left it with F. W. Church, an employé of Fleming's, in San Antonio, to be forwarded to the General Land Office for filing. After Fleming left, it was discovered that it misdescribed the land. A new affidavit was secured from Fleming, who was then in Victoria, which was dated the 8th of June, 1907, and upon receipt of same by Church it was by him on the 14th of June forwarded by mail to the General Land Office, which in due course of mail should have reached the Land Office on the 15th, the next day, but was not filed in the General Land Office until the 17th of June at 8 or 9 o'clock a. m. The deed of Fleming was written by him on the 5th of June, as stated. He acknowledged it before his clerk, and left it with him, giving him instructions to retain the deed in his (Fleming's) office, not to be delivered to the grantee or any other person until his (Fleming's) affidavit had been actually filed in the General Land Office. Fleming being absent from the city, Church, without additional instruction from him, mailed the deed to the county clerk of Kinney county, who received it at 5 o'clock of the evening of the 17th of June, 1907, being the afternoon of the same day the affidavit was filed in the General Land Office, and on that same day Payne went into possession of the land and made his settlement.

From this we assume that Payne would not purchase the land before Fleming had complied with the law and filed the proofs in the Land Office. It is not stated what time Payne went into possession of the land, but it was probably after the deed had been received by the clerk, in the afternoon, for registration. There is no proof when Payne's note was executed and delivered to Fleming, but we assume that it was not done until the transaction was closed by the filing of the affidavit and the delivery of the deed, which was not accomplished until it had been filed for record in the county clerk's office for registration in Kinney county. The legal title, so far as Payne is concerned, was still in Fleming and Payne acquired no equitable title to the land until he became responsible by the execution and delivery of his note and his assumption of Fleming's debt to the state. This was agreed to and the sale to him ratified when he went in possession of the land, assuming to pay to the state and agreeing to discharge Fleming's obligation.

We cannot agree with the contention of appellee, in the very face of the proofs disclosed by the record, that Payne or Fleming attempted to make a sale and impose upon the state a substituted purchaser prior to Fleming's having made an actual settlement and filed his proofs in the Land Office.

[1, 2] It cannot be said that the deed was held by the grantor in escrow in this case, or that it was a delivery, because he left it with his own clerk after he had written it, without any instructions or knowledge of Payne, so far as the record discloses, of his purpose. He could at any time have destroyed the deed, and Payne would have been without remedy for specific performance. The contract was not executory. The seller was in no way bound. No agreement was made. The terms of agreement were not stated.

[3] All that the record shows is that Fleming prepared the deed and held it until after his affidavit was in fact filed in the Land Office, and neither the date of the deed nor the date of his acknowledgment can in any

way control this transaction, as was said in Patton v. Terrell, supra. The facts must control, and, therefore, we cannot agree with the contention that either a sale or attempted sale had been made prior to the filing of the affidavit in the Land Office.

It must be borne in mind that this case presents one of actual settlement in good faith, in which the appellant has expended large sums of money and incurred obligations, and the proof shows the seller was not attempting to evade the law, but was trying to comply with it by filing his affidavit of actual settlement before he would sell the land, and the grantee did not go upon the land or become responsible to pay for the same until the deed had been delivered to him upon which he was bound, and the date of this transaction must be controlled by the date when the deed was filed in the recorder's office. If this gives cause of forfeiture, it would be because the acts of the Land Commissioner were justified on account of the date of the instrument. Where the forfeiture is upon purely technical grounds on the face of the documents themselves, like the case of Patton v. Terrell, cited, the action of the court will be controlled by the true facts and the intentions of the parties.

[4] The evidence shows the intention of the parties was not to transfer the land prior to actual settlement, nor prior to the filing of evidence thereof in the Land Office, because the settlement had been made and the power of the sale did not depend entirely upon the evidence found in the Land Office. No attempt was made to transfer the property before that time, but the purpose was to transfer it after the accomplishment of these facts, against which there is no prohibition in the statute or any reason to justify a forfeiture.

[5] It must be borne in mind that forfeitures are not favored, and that to justify the forfeiture in any case requires that the party seeking the forfeiture show his unquestionable right to pursue a course that always, more or less, brings hardships.

In this case Fleming had made his settlement and prepared an affidavit of that fact. He had a right to sell to a purchaser who would take his place and improve the property and continue it. The evidence of such right as a regulation and condition must be shown by his affidavit. This requirement, though adding nothing to the settlement, was to satisfy the law so as to take the land finally off the market. It was a regulation. The prohibition was to prevent the sale or attempt to sell until affidavit was in the Land Office. The minute the affidavit was there the sale could be carried out.

There is no question raised as to the truth of the facts stated in the application or of the original intention of the applicant, but it is as to the priorities of filing in the Land Office.

It will be observed in this case there was no attempt to forfeit the home tract and the additional lands because of Fleming's failure to actually settle upon and occupy for the requisite time the lands in good faith or that of appellant to so occupy them. It is not questioned. The ground of forfeiture was that Fleming had transferred before his filing proof of settlement in the Land Office. The Commissioner's forfeiture was erroneous on the facts disclosed, but of which he was not aware nor in possession at the time.

Appellant each year paid the interest due upon the purchase for 1907, 1908, and 1909, and thereafter continued his tender and offer to do so. On June 10, 1910 the state sold him the land in controversy, to wit, sections 556–558, as additional to his home section, No. 14. Three years, nearly, after the purchase the forfeiture took place, as shown, and for the cause stated.

[6] To have a clear understanding of appellee's position on the errors complained of by appellant, involving the question raised on the second ground, we quote his fourth proposition: "Where an original purchaser of state school land from the state transfers the same before his three years' occupancy is completed, the only right of his vendee is that of a substituted purchaser, and, as such, he must not only occupy the land as an actual settler from the date of his purchase, but he must make the affidavit of settlement required by law and swear that he is purchasing the land as a home, and that he is not acting in collusion with others for the purpose of buying the land for any other person or corporation and that no person or corporation is interested in the purchase, save himself. That is, he must substitute himself with the state for the original purchaser and become a direct purchaser from the state himself."

It is not contended that the act of 1905 requires the substituted purchaser to make an affidavit to effectuate his purchase and file obligations,' etc. That law repealed all laws in conflict and contained no such provision. Both parties concede that such purchaser's right to sell his land as a substituted purchaser is regulated, and comes under article 4218k, Revised St., and not under the terms of the act of 1905, and we therefore confine ourselves to a discussion of that provision of the law.

It is true no obligation was filed in the Land Office on the date of purchase by appellant together with his affidavit, under that statute requiring, among other things: "In case three years' residence has not already been had upon said land and proof made of that fact stating that he desires to purchase land for a home, and that he has in good faith settled thereon * * * and hereupon the original obligation shall be surrendered or canceled or properly credited * * * and the vendee shall become the purchaser direct from the state and be subject to all the obligations and penalties prescribed by this chapter."

It will be noted this statute is regulating the manner in which sales may be made. Suppose appellant had remained on the place for the requisite period contemplated to make his home complete and paid all the obligations, in money, and nothing done by the Commissioner, or any one else to forfeit within that period of time, or to disturb his possession, would a forfeiture be tolerated? The state has had all the money and secured the actual settlement of her lands. Under what law would the forfeiture take place? Not because he has failed to pursue the method suggested for substitution, for no time is fixed.

When forfeitures are intended to take place ipso facto upon the happening of certain events, or when they may be enforced, the cause of forfeiture should be plainly and clearly stated and the time definitely fixed, for they are not favored. This does not seem to have been done under the provisions of this law.

In Chancey v. State, 84 Tex. at page 537, 19 S. W. at page 710, the court says: "Actual settlement of the land was what the Legislature desired, and whether this was made by the original purchaser or some one holding under him was not important, provided the settlement was made within the time prescribed." This case cites the case of Taylor v. Burke, 66 Tex. 643, 1 S. W. 910, with approval. The court holds the statute to be directory and a noncompliance would not defeat the right "if the payments be made as the law requires"; then further says: "Unless such transfer be filed, the original purchaser may still remain liable on his obligation for the purchase money, and a patent cannot issue to the vendee, but if he make the payments as they fall due, the patent would issue to his vendor, as against whom he might enforce his equitable right after the patent issues. If the Legislature had intended that the failure to file such a transfer was to operate a forfeiture of all right under the purchase, it would have so declared and have fixed a time within which, after the sale, the transfer should be filed."

It would present a very different question if there were a failure of actual settlement, such as discussed in Spence v. Dawson et al., 96 Tex. 47, 70 S. W. 73; Hardman v. Crawford, 95 Tex. 193, 66 S. W. 206; Reininger v. Pannell, 46 Tex. Civ. App. 137, 101 S. W. 816. On the contrary, the actual settlement was complete and no question is raised on that, simply the evidence had not been filed in the Land Office prior to the sale.

Since the settlement was complete and the appellant has continued his settlement, paid all dues that would be received and made a perfect home and improvements thereon, we cannot see any authority to forfeit and take from him the property right to complete his purchase, finally, because he had not filed the application to become a substituted purchaser. At least there seems to be no law authorizing forfeiture for such failure. Smith v. Coble, 39 Tex. Civ. App. 243, 87 S. W. 170; Lee v. Green, 24 Tex. Civ. App. 109, 58 S. W. 847.

We therefore believe the court below erred in its judgment. We sustain all the assignments of error, and here now reverse the judgment of the court below and render the same for appellant, with costs.