**DELANY v. PADGETT et al.**

No. 13635.

United States Court of Appeals Fifth Circuit.

Jan. 18, 1952.

Rehearing Denied March 18, 1952.

T. B. Stubbs, Galveston, Tex., for appellant.

Marion J. Levy, Adrian F. Levy, Jr., Galveston, Tex., for appellees.

Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

Filed July 2, 1949, the suit was for the title and possession of 78.32 acres of land in the John Sellers League in Galveston County, Texas.

The claim was that plaintiffs and those under whom they claimed had record title to the land sued for under the muniments their abstract of title disclosed.

The defenses were: (1) a denial that plaintiffs had record title, in that, as shown in one of their muniments,[1] the land it described as set apart to plaintiffs' predecessor in title is not the land sued for; and (2) a claim of title by adverse possession under the ten year statute of limitations of the State of Texas for ten years from and after April, 1938.

The case was tried to, and fully heard by, a jury, and, upon plaintiffs' motion for verdict made at the conclusion of the evidence, there was a directed verdict for plaintiffs and judgment entered for them.

Appealing from the judgment, defendant is here insisting that, for the reasons set out in his answer: (1) that the land awarded to plaintiffs' predecessor in the partition decree is not the land sued for, and plaintiffs have not shown record title; (2) that the defendant showed a title by limitation to it; and (3) that, at the least, the evidence made out a case for a jury verdict on the two issues of record title and limitation; it was error to instruct a verdict for plaintiffs. We do not think so.

Defendant makes no claim to having record title to the land. Indeed, unless he has acquired a title by adverse possession, he is admittedly a naked trespasser without shadow or right. At worst for plaintiffs, the evidence shows no more than a mistake made by the surveyor, who furnished the field notes for the partition decree, as to the location of the west line of the Sellers Survey.

In these circumstances, defendant finds himself hard put to it in law to maintain his claim that plaintiffs, whose title is un-

1. The judgment and decree of the District Court of Galveston County, Texas, in the partition suit, cause No. 15277, Benton v. Etheridge.

assailed and unassailable except for this surveyor's error, have not made out a record title at least sufficient for recovery against him, a naked trespasser.

The district judge was of the opinion that the mistake in the distance calls of the field notes furnished by the surveyor for the partition decree was rendered harmless by the overriding call for the west line of the Sellers Survey. He was of the opinion, too, that after fifty-eight years of recognition of the correctness of the decree and of the location of Parcel "E", as claimed by plaintiff under the field notes in their deeds, it does not lie in defendant's mouth to challenge either the efficacy of the decree or the location of the parcel in question.[2]

We agree with this view for we are of the opinion that if, considering the partition as a whole, the mistake of the surveyor carried into the field notes is an er-

ror in the decree requiring rectification, this is a matter, not for defendant to raise against plaintiffs, but for one or more of the co-partitioners, and, since they have not raised it, defendant may not.

Whether a re-partition is, or will be, necessary, plaintiffs stand sufficiently seized of an interest in the survey to maintain this suit on behalf of all against the defendant as a trespasser.[3]

On the issue of record title, then, we are in no doubt that the district judge was right in directing a verdict for plaintiffs, and that, in doing so, he must be sustained.

Upon the issue of limitation, also, the district judge was of the clear opinion that the defendant had not made out a case for a jury verdict, and for the reasons stated, and the authorities cited, in the memorandum [4] he read to the jury, he in-

2. Duke v. Houston Oil Co., Tex.Civ.App., 128 S.W.2d 480.

3. 32 Tex.Jur. 146; 41 Tex.Jur. 656 and 472 et seq.; Whitehead v. Foley, 28 Tex. 268; Bankston v. Bankston, Tex.Civ. App., 206 S.W.2d 839; Pure Oil Co. v. Tunnell, 126 Tex. 57, 86 S.W.2d 207; Ramsey v. McKamey, 137 Tex. 91, 152 S.W.2d 322; Condra v. Grogan Mfg. Co., Tex.Civ.App., 228 S.W.2d 583.

4. "Then I come to the claim of the defendant that he has limitation title under the Texas Ten Years' Statute of Limitation [Vernon's Ann.Civ.St. art. 5510]. The evidence carries us back to March or April, 1938, when defendant claims that he first entered upon this land involved in this suit. He seems to have avoided that particular way of putting it, and claims that he entered upon the land included in his north pasture.

"At the date named, March or April, 1938, it is interesting to notice the geography of the situation. Along the west line of what became the defendant's pasture and on the west side of the Johnny Palmer Road there was a fence. It belonged, I believe, to the Stewarts. Certainly it did not belong to the plaintiffs in this case and did not belong to the defendant in this case. It enclosed land not involved in this suit, never in defendant's pasture. In other words, the picture is that here is Mr. Stewart's pasture on the west side of that road, enclosed by a fence, certainly with a

fence along the line of the Johnny Palmer Road and west of that line.

"Another picture is that over to the east, along what defendant claims became the east boundary of his pasture, there was an interurban railroad right of way fence. I assume it is like the various railroads and interurban lines, that their rights of way are fenced, and there was a right of way fence there, perhaps in various stages of repair. That may be a matter of some dispute. But the fence that was there and which the defendant says he took over had not been put there in connection with any boundary line or in connection with anything involved in this suit, and not in connection with any parties to this suit. It was put there by the interurban railroad, the interurban railway, electric line.

"So neither the fence on the west side of the Johnny Palmer Road nor the interurban right of way fence ever had anything in the world to do with the land involved in this suit. They were just set out there to perform functions for other people, other tracts of land, the one on the west side of the Johnny Palmer Road enclosing land belonging to the Stewarts and the interurban fence enclosing the right of way of the interurban railroad to keep stock or cattle off, and so on. So the picture we have on the east side and the west side is that the fences had no earthly connection with anything connected with anything involving the plaintiffs' land.

structed a verdict for plaintiff on this issue too.

"Now, down on the south boundary the defendant also finds a fence. He minimizes the condition of it and the use that could be made of it, but it was there, and was not put there by the defendant or by any person who was undertaking to claim plaintiffs' land. Neither was the interurban fence put there by any person undertaking to claim plaintiffs' land. That is true of the fence on the west side of the Johnny Palmer Road. None of those fences were there for the purpose of trying to take from the plaintiffs by limitation title their 80 acres of land.

"In connecting to the Stewart fence on the west side of the Johnny Palmer Road, the defendant caused to be put in, at any rate there were put in, certain cattle guards across the County Road and he built across the County Road to connect with the fence on the west side of the Johnny Palmer Road; that is, he built across the Johnny Palmer Road, which was a county road, onto the west side, thus enclosing in the pasture which he here is claiming the county road, the Johnny Palmer Road. He makes his connection also with the south fence, with the interurban right of way, and connection to the north line. What I am saying to you is that under the law, as I understand it, under the authorities in Texas, the taking possession of and holding this tract of land in his possession there will not support his claim of title under the Ten Years' Statute of Limitation.

"Now then he says that the reason he did that, what he did, was to save expense. It might be assumed that he did it in this way, in order not to put the plaintiffs on notice that he was claiming the tract of land.

"I have in mind, of course, that the plaintiffs' tract of land is not touched by either the south line fence, nor the west line of fence, nor the Johnny Palmer Road, but is over adjoining and next to the interurban right of way. But one of the reasons I am instructing you to return a verdict for the plaintiffs in this case is that I do not think that either the defendant going into possession in the manner detailed and in order to avoid expense would start running in his favor the Ten Years' Statute of Limitation, and if he continued in that fashion in possession, he would not obtain title under that statute.

"Of course the evidence shows that later on he built a fence of his own on the east side of the Johnny Palmer Road

While we are not prepared to, and we do not, adopt as our own all of the reasons

and has more ground after he built that fence to contend he had an enclosure that would put plaintiffs on notice and would cause the statute to run against them than he had before. Of course that fence was built east of the Johnny Palmer Road, but not ten years before the filing of this suit, and that would not avail him anything here.

"So I repeat again that under the law, as I understand it, his entry and his holding of this tract of land was not sufficient to mature title in him under the Texas Ten Years' Statute of Limitation.

"There is still another point I call attention to, that a part of the tract of land involved in this suit is not in the defendant's pasture, but nowhere in his pleadings does he describe and claim except to land that is within his pasture. I think that is fatal to his recovery under the Texas authorities.

"Furthermore, there is a statute in Texas that reads this way. It is Article 5511 of the Texas Statutes [Vernon's Ann. Civ.St.]: 'a tract of land owned by one person, entirely surrounded by a tract or tracts, owned, claimed or fenced by another, shall not be considered enclosed by a fence enclosing the circumscribing tract or tracts, or any part thereof; nor shall the possession by the owner or claimant of such circumscribing land of such interior tract be the peaceable and adverse possession contemplated by Article 5510 unless the same be segregated and separated from the circumscribing land by a fence, or unless at least one-tenth thereof be cultivated and used for agricultural purposes, or used for manufacturing purposes.'

"Applying that to this case, meaning that plaintiffs' land is included in this man's pasture and that he is claiming and has fenced in with plaintiffs' land other tracts of land which surround it, that will not permit him to claim under the Texas Ten Years' Statute.

"Now, there is this exception to the statement that plaintiffs' land was entirely surrounded, in that there is a small portion along the line of the interurban right of way that is not surrounded by land fenced or claimed apparently by this defendant. But I am of the opinion that the surrounding surveys are so nearly entirely surrounding that this statute would apply, and I give that as another one of the reasons why I think he cannot hold under the Ten Years' Statutes of Limitation.

he gave for doing so, we are in full accord with the general principles announced, and a reading of the record convinces us that the verdict was rightly instructed.

It is true that the statutes of limitation, compliance with which gives full title by adverse possession precluding all claims, declare that the entry must be made and continued under a claim of right.

It is also clear that, as interpreted by the courts, they do not require any belief on the part of the possessor that he has any right to, or claim upon, the land except that evidenced and ripened by his open and notorious possession. Houston Oil Co. v. Brown, Tex.Civ.App., 202 S.W. 102. These same authorities do, though, make it perfectly clear that the claim of right referred to in the statutes means a bold and open, a downright and persistent claim asserted not furtively by stealth and artifice, but openly, notoriously, unequivocally, adversely and continuously. Because this is so, the decisions under these statutes take pains to leave in no doubt that if there is any break or chink in the armor of proof which a possessor must put and keep on when he undertakes to acquire a title by limitation, such as a single lisp of acknowledgment, the slightest uncertainty or equivocation in the openness and down-

rightness of his claim, a failure to comply precisely and exactly with the statutory provision, it is, and will be, fatal to the claim. Thus, as the decisions cited by the district judge show, one cannot support a claim of adverse possession, that is, that, by enclosing it, he has taken the land into such possession as will support a limitation title, when all that he did within the ten year period was, for the purpose of running cattle inside the enclosure thus formed, merely to run connecting lines between two or more existing fences and across a public road which, after two days, was opened again, a cattle guard being furnished by the county authorities.

■ Neither can one who, as here, runs cattle on a pasture thus enclosed, claim title by adverse possession to a particular tract when the pasture contains many tracts of land held under separate ownerships and distinct chains of title, as to some of which he recognizes the title of the owner, merely because this tract is included in this general enclosure. Especially is this so when, as here, the defendant's possession was qualified by a most general agreement with Mr. Maco Stewart, that he was not claiming adversely any of the lands in his pasture that belonged to Mr. Stewart or to any of Mr. Stewart's clients.[5]

---

"Another reason is that I listened very carefully to defendant's testimony with respect to his claim. No limitation claimant in Texas can recover unless he claims the land that he has enclosed or is cultivating or using. He has got to claim it. One of the old-time cases said he has to put up his flag and keep his flag flying. I was a little surprised and puzzled to note that the defendant never did in his testimony before the court come straight out and say that he was claiming the particular land involved in this suit. As far as he would go was that he was claiming the land involved and included in his pasture.

"I have discussed some of the reasons. There are other reasons I might elaborate on, but this will give you an idea of why I am directing you to return a verdict for the plaintiffs in this case."

"The authorities under the first portion of the Charge on Limitation are as follows: West Production [Co.] v. Kahanek, 132 Tex. 153, 121 S.W.2d 328; Felts v. Whitaker, [Tex.Civ.App., Fort Worth], 129 S.W.2d 682, affirmed in Whitaker v. Felts, 137 Tex. 578, 155 S. W.2d 604; McKee v. Stewart, 139 Tex. [260] 269, 162 S.W.2d 948; Primitive Baptist Church v. Fla-Tex Corp. [Tex. Civ.App.], 158 S.W.2d [549], 553.

5. On cross examination, after defendant had stated that he made no effort to find out who the owners were of the various and numerous tracts in this 1154 acres, and that he never paid any taxes on any of the land in the pasture except 100 acres in the southwest corner and in the Wilson League, the following colloquy occurred:

"Q. Well, to shorten it, Mr. Delaney, have you ever assessed the tract in controversy? A. I never heard of the tract in controversy.

"Q. Never heard of it? A. No, sir.

"Q. And therefore you never paid any taxes on it? A. I never knew that tract was there, if it is. I am sure that I have never paid any taxes on the piece of ground in controversy.

Under testimony of this kind, in order to start limitation running as to tracts situated with reference to the enclosure, as plaintiffs' land is, it would be essential that it be possessed, used, and cultivated in such a way as to unequivocally give notice of defendant's adverse claim to it, as distinguished from other lands in the same pasture as to which he admits he was making no claim.

We agree with the defendant: that the policy of this state, as set out in the statute of limitations of ten years, and in the decisions construing them, is to give effect to an adverse holding by a naked possessor when it measures up to the statutory requirements; and that where there is any credible evidence giving support to the required legal elements of the claim, the question is for the jury. There can be no doubt, though, that the burden to maintain it rests heavily on a person making the kind of naked claim made here under circumstances of the kind this record discloses, and that, if his claim is wanting in any of the legal aspects of such a claim, a verdict may and should be directed.

The defendant is an officer of the law, a justice of the peace, a respected member of his community. His office and his standing in the community for integrity and upright dealing with his neighbors, as shown by his testimony as to his dealings with the Stewarts, presents a picture which is legally incompatible with the claim he makes here. This is: that the casual kind of fencing of the large tract and the use that was made of the land for running cattle was not with the neighborly intent of using the land by the sufferance of his neighbors, but with the unneighborly one of taking it away from them, and that this unneighborly intent was made *unmistakably manifest* to those neighbors.

Situated thus, he could not, by the casual joining of fences and the mere pasturing of cattle within the enclosure thus conveniently formed, acquire a title to plaintiffs' land without bringing clearly home to plaintiffs by open, hostile, and unequivocal acts that he had included plaintiffs' land in the pasture with the intent to misappropriate it.

The shelves are groaning with books containing decisions of the Texas courts dealing with claims under this statute. The general principles they lay down are not in dispute. The difference in the cases arises entirely out of the application of these principles to the differing facts. It would serve no useful purpose for us to gather and catalogue some of the many thousands of the opinions which have been written. It will be sufficient for a statement of the general principles to refer, as typical of them all, to the recent case of Rick v. Grubbs, 147 Tex. 267, 214 S.W.2d 925, 926. There the court, after quoting from Art. 5515, its definition of adverse possession, quoted from Satterwhite v. Rosser, 61 Tex. 166, at page 171: "It is well settled, that, where a party relies upon naked possession alone as the foundation for his adverse claim, it must be such an actual occupancy as the law recognizes as sufficient, if persisted in for a long enough period of time, to cut off the true owner's right of recovery. It has been said that such possession must not only be actual, but also visible, continuous, notorious, distinct, hostile, *and of such a character as to indicate unmistakably an assertion of a claim of exclusive* ownership in the occupant. * * * The possession must be continuously and consistently adverse to the true owner. * * *" (Emphasis supplied.)

It then went on to say: "This statement of the law was quoted with approval as the rule consistently followed by this Court in the recent decision of Heard v. State, [146] Tex. [139], 204 S.W.2d 344, 347."

The cases cited and relied on by appellant, of which Peveto v. Herring, Tex.Civ.

"Q. You referred yesterday during your mony to Maco Stewart's clients. What did you mean by clients? A. The men his firm represented, I judge.

"Q. Then if Mr. Stewart's firm, or its successors, represented plaintiffs in this suit, you would not be claiming against the plaintiffs? A. If Mr. Stewart had given the name of this party at the time when he gave me the different names, I am sure there would not have been any question."

App., 198 S.W.2d 921, seems to be the most depended upon, are not to the contrary of the views announced hereinabove. In Peveto's case and in the other cases the facts were greatly different.

■ The district judge was right in holding upon the record in this case, that the claim of defendant to a title by limitation had no basis in law or in fact, that the case was not one for a jury verdict on that issue, and that a verdict for plaintiffs should be instructed. The judgment was right. It is affirmed.