**Ernestine Jones GUITAR, Administratrix, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1290.**

United States District Court
N. D. Texas, Abilene Division.

Nov. 5, 1955.

George W. Parker, Jr., Stone, Agerton, Parker & Kerr, A. Edwin Brooks, Brooks & Brooks, Fort Worth, Tex., for plaintiff.

Heard L. Floore, U. S. Atty., Fort Worth, Tex., for defendant.

ESTES, District Judge.

### Findings of Fact

1. G. E. Jones and Martha Boggs Jones were married only one time and that to each other. They had only two children, W. B. Jones and Ernestine Jones Guitar, both of whom survived them. On June 21, 1930, Martha Boggs Jones died intestate. There was no administration on her estate and there was no necessity therefor.

2. At the time of the death of Martha Boggs Jones, there was a community estate of herself and her husband, G. E. Jones, of approximately $181,554.42. The cash in this community estate amounted to $3,257.18. The rest of the estate was made up principally of real estate, personal property, a dry goods business composed of solely owned stores at Merkel, Lorenzo and Levelland, Texas, and the capital stock of two corporations, Jones Dry Goods Company, Inc. and Jones-Rutherford Company, operating dry goods stores in several other West Texas towns. Martha Boggs Jones left no separate estate and the only separate property of G. E. Jones was some real estate not involved in this suit. The community estate of Martha Boggs Jones and her husband, G. E. Jones, was not partitioned after her death.

3. Following the death of Martha Boggs Jones, G. E. Jones under an express oral agreement with W. B. Jones and Ernestine Jones Guitar, held and managed the one-half interest in the community estate which the children inherited from their mother, together with the increase, for the benefit of W. B. Jones and Ernestine Jones Guitar. This arrangement continued until the death of G. E. Jones.

4. At no time from the death of his wife until his own death did G. E. Jones hold or claim any of the property inherited by the children from their mother adversely to them, but he held, managed and operated the entire estate in recognition of the children's undivided one-half interest therein.

5. On December 16, 1942, G. E. Jones drew and delivered to W. B. Jones and Ernestine Jones Guitar each a check in the amount of $10,000. These checks were in partial distribution of the interests of the two children in their mother's estate. The only other distributions made to the children from their mother's estate were as follows:

On January 26, 1944, G. E. Jones purchased a $1,000 government bond for each of the children.

On May 24, 1945, G. E. Jones purchased a $2,000 government bond for each of the children.

On July 9, 1943, G. E. Jones paid to each of the children the sum of $1,197.-78. This was in payment of accrued dividends and the par value of the stock owned by each of them in Jones Dry Goods Company, Inc., which had been dissolved just prior to that time.

6. From about 1940 until the time of his death in 1948, G. E. Jones and H. G. Castle were engaged in the real estate business as partners. An undivided one-half interest in the interest of G. E. Jones in this partnership was held by him as trustee and for and on behalf of his two children. The value of the entire estate of G. E. Jones, W. B. Jones and Ernestine Jones Guitar in the real estate partnership of Castle & Jones had a reasonable value of $26,299.45, at the time of the death of G. E. Jones.

7. G. E. Jones died on September 9, 1948, leaving a duly executed will which was admitted to probate by the County Court of Taylor County, Texas. Under the terms of this will, G. E. Jones left all of his property to his two children, W. B. Jones and Ernestine Jones Guitar, share and share alike.

8. On or about December 7, 1949, a timely estate tax return was filed for the estate of G. E. Jones, with the Collector of Internal Revenue at Dallas, Texas, showing a tax in the sum of $25,-000.60. Such tax was paid. Thereafter the Commissioner of Internal Revenue assessed an additional tax of $46,100.06 together with interest in the sum of $8,-

250.96 making a total additional assessment of taxes and interest in the amount of $54,357.02. On or about December 31, 1952, the additional deficiency assessment was paid on behalf of the estate of G. E. Jones.

9. On November 7, 1952, within the proper time therefor, a claim for refund was filed with the Collector of Internal Revenue, Dallas, Texas, for overpayment of estate taxes for the estate of G. E. Jones, deceased, in the amount of $4,260 or for such greater amount as might be refundable by law. On November 4, 1953, an amended claim for refund was timely filed with the Director of Internal Revenue, Dallas, Texas, for overpayment of estate taxes in the amount of $48,688.66, and interest in the amount of $8,256.96 or a total sum of $56,945.62, or such greater amount as might be refundable by law.

10. On March 8, 1953, the Director of Internal Revenue disallowed the original claim for a refund and on March 19, 1954, the Director of Internal Revenue disallowed the amended claim for refund.

11. An undivided one-half of the entire estate held by G. E. Jones at the time of his death was in fact the property of W. B. Jones and Ernestine Jones Guitar, constituting the interests they inherited from their mother upon her death together with the increase therefrom.

### Conclusions of Law

1. Upon the death of Martha Boggs Jones on June 21, 1930, W. B. Jones and Ernestine Jones Guitar inherited their mother's undivided one-half interest of the above described community estate under the laws of descent and distribution of the State of Texas. Article 2578, Revised Civil Statutes of Texas.

2. At all times from the death of his wife until his own death G. E. Jones was the trustee of an express trust holding the interest of his wife in their community estate in trust for their two children who inherited such estate from their mother.

3. G. E. Jones did not acquire title by limitation to either the personalty, Texas & N. O. R. Co. v. Schoenfeld, 136 Tex. 173, 146 S.W.2d 724, or realty, Delany v. Padgett, 5 Cir., 193 F.2d 806, inherited by W. B. Jones and Ernestine Jones Guitar from their mother.

The Government pleaded that these children's interest was lost to them by alleged limitation title to both real and personal property acquired by their father, G. E. Jones. The Government's brief, however, admits that it "does not urge that limitation title has run on any of the real property."

It is the Court's opinion that G. E. Jones did not acquire his children's one-half interest by limitation because: (1) he did not hold any of this property adversely to his children, (2) the fiduciary and natural relationship with his children was such that he did not and, under the facts of this case, could not have been able to successfully acquire limitation title from his children, and (3) the plea of limitation was personal to G. E. Jones and not available to the Government in this case.

(1) Regarding adverse possession:

Texas & N. O. R. Co. v. Schoenfeld, supra [136 Tex. 173, 146 S.W.2d 726]:

"It is necessary * * * in order to acquire title to personal property by adverse possession * * * that the possession and use be under claim of right exclusive and hostile to the owner."

In Delany v. Padgett, supra, Judge Hutcheson said [193 F.2d 810]

"* * * he [who] undertakes to acquire a title by limitation * * *. a single lisp of acknowledgment * * * will be, fatal to the claim."

In Cliett v. Scott, D.C.S.D.Tex., 103 F.Supp. 440, 445 citing Stiles v. Hawkins, Tex.Com.App., 207 S.W. 89, and numerous Texas authorities, Judge Kennerly stated that in order to establish a limitation title a co-tenant must carry "a greater burden."

**512**

(2) Regarding fiduciary and natural relationship:

King v. Bruce, 145 Tex. 647, 201 S.W.2d 803, 807, 171 A.L.R. 1328:

"Statutes empowering the husband to manage * * * community assets make the husband essentially a trustee".

As a survivor in community, plaintiff's father occupied a fiduciary relationship to his children, who were his co-tenants. Spencer v. Pettit, Tex.Civ. App., 268 S.W. 779; Id., Tex.Com.App., 2 S.W.2d 422, 34 S.W.2d 798.

In Pickens v. Pickens, Tex.Civ.App., 52 S.W.2d 1087, 1091, Judge Dunklin said:

"According to the common experience of mankind * * * one of the strongest inducements to accumulate property is the purpose to leave it to one's family after death".

In Hayden v. McMillan, 4 Tex.Civ. App. 479, 23 S.W. 430, 431, Judge Fly said:

"* * * By the common consensus of the human family, barbarous and civilized, the man is placed at the head of the family, clothed with its government, care, and *protection*".

(3) Plea of limitation personal in character not available to the Government under facts of this case:

The Government cites McLendon Hardware Co. v. Jewett Lumber & Hardware Co., Tex.Civ.App., 157 S.W.2d 452, where one creditor of an insolvent's estate in receivership was permitted to plead limitation against another creditor.

Plaintiffs in opposition cite National Life & Accident Ins. Co. v. Hines, Tex. Civ.App., 50 S.W.2d 364, and McCormick v. National Bank of Commerce, Tex.Civ.App., 106 S.W. 747, for the proposition that the plea of limitation is a personal one which the Government may not plead for G. E. Jones, deceased.

Belotti v. Bickhardt, 228 N.Y. 296, 127 N.E. 239, 243, states "Adverse possession [was] not a favored method of procuring title".

The fiduciary and natural relationship existing between G. E. Jones and his children and his duty and inclination to protect rather than diminish their estate, (non-existent in the cited McLendon Hardware Co. case) were such that the Government may not plead that he acquired title to his children's property by limitation which he did not assert in his lifetime.

█ 4. The estate of G. E. Jones consisted only of one-half of the whole estate held by him and the estate tax should be calculated and paid only on an undivided one-half interest of the whole estate held by G. E. Jones at the time of his death as set out in plaintiff's claims for refund.

5. The plaintiff is entitled to judgment for overpayment of the estate taxes in the amount of $51,102.72 and overpayment of interest in the amount of $8,298.10, plus statutory interest.

Let the attorneys for plaintiff prepare and present judgment in accordance with these findings of fact and conclusions of law.